Mary Sue **HERRERO**, Appellant,

v.

**CUMMINS MID–AMERICA, INC., and Judith J. Lockhart, and John Jason Herrero, Respondents.**

**No. WD 51770.**

Missouri Court of Appeals, Western District.

July 23, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 1996.

Application to Transfer Denied Oct. 22, 1996.

Stephen Crain, Gladstone, for appellant.

James Conkright, Overland Park, KS, Charles William Fairchild, Kansas City, William D. Piedimonte, Independence, for respondents.

HANNA, Judge.

Plaintiff, Mary Herrero, appeals from the trial court's order granting summary judgment in favor of defendants, Cummins Mid–America, Judith Lockhart, and John Jason Herrero, in an action for fraud. Plaintiff is the widow of John W. Herrero, the decedent. The contest is primarily between the decedent's widow and his son by a former marriage, John Jason Herrero.

The decedent was a pension plan participant and employee of Cummins Mid–America. In March 1987, the decedent and plaintiff executed a beneficiary designation form to reflect a 50%–50% split of the decedent's pension proceeds between plaintiff and Thelia Quarin, mother of the decedent's son, defendant John Jason Herrero.

In December 1992, plaintiff executed another beneficiary designation form at the decedent's request. This form identified the decedent's son as the primary beneficiary. His wife, plaintiff, was designated as the secondary beneficiary.

In completing the 1992 form, plaintiff checked the box that she and the decedent were married. She also filled in her name,

address, birth date, and social security number, and then signed and dated the document. The decedent signed the form and submitted it to Cummins to be filed and notarized. The spousal consent provision contained in the 1992 form stated, in pertinent part:

> I, the undersigned spouse of the participant named in the foregoing "Designation of Beneficiary," hereby certify I have read the Designation of Beneficiary and fully understand the property subject to the designation is my spouse's accrued benefit under the Plan, in which I possess a 50% beneficial interest, provided I survive my spouse. Being fully satisfied with the provisions of the designation, I hereby consent to and accept the beneficiary designation, without regard to whether I survive or predecease my spouse. This consent is irrevocable unless my spouse changes the designation. If my spouse changes the designation I understand I must make a similar consent to the new designation or my waiver is no longer effective.

Plaintiff acknowledges that the 1992 form identified the son as the primary beneficiary and her as the secondary beneficiary. She also admits that she signed the form in two places, including the spousal consent provision. Plaintiff admits that she agreed to have the document notarized outside of her presence.

Sometime after plaintiff signed the form, but prior to its submission to Cummins, the form was changed to show "90%" next to the primary beneficiary box and "10%" next to the secondary beneficiary box. Upon receiving the form, Lockhart, an employee of Cummins and the notary for the designation forms, "whited out" the word "Secondary" and inserted the word "Primary", so that the form identified two primary beneficiaries. Lockhart did so after explaining to the decedent that the 90%–10% allocation was inconsistent with the terms "primary" and "secondary." The decedent consented to this change.

On April 13, 1993, the decedent died intestate. Plaintiff filed suit to set aside the 1992 form on the basis of fraud. Cummins filed a motion for declaratory judgment asking the court to determine who was entitled to the pension proceeds. The son filed a summary judgment motion, which the court sustained. The trial court awarded the son 100% of the pension benefits based on the 1992 form as it was written when plaintiff signed it. Plaintiff appeals.

■ Appellate review of the propriety of summary judgment is essentially *de novo. ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is viewed in the light most favorable to the party against whom summary judgment was entered, and that party is afforded all reasonable inferences, which may be drawn from the evidence. *Id.* Summary judgment will be affirmed on appeal if the reviewing court determines that no genuine issues of material fact exist and the movant has a right to judgment as a matter of law. *General Motors Corp. v. Kansas City*, 895 S.W.2d 59, 61 (Mo.App.), *cert. denied,* — U.S. —, 116 S.Ct. 277, 133 L.Ed.2d 197 (1995).

■ In plaintiff's first point, she alleges that the trial court erred in sustaining the son's motion for summary judgment in that there was no "informed consent" by plaintiff, and the trial court misapplied the facts in finding that there was a valid consent, because the evidence showed that changes were made to the form after plaintiff had signed it, without her consent, and the form was not properly witnessed or acknowledged.

The changes to which plaintiff refers were made after plaintiff signed the form, but before it was notarized. Specifically, the original allocation of the proceeds was changed and Lockhart "whited out" the word "Secondary" and wrote in the word "Primary." Plaintiff asserts that these alterations effectively changed the designation of beneficiary, and the decedent did not obtain her consent for the changes. She argues that because the terms of the form required her consent, then her original consent, as it applied to the changes, was invalid.

However, when plaintiff executed her consent, John Jason Herrero was listed as the primary beneficiary. The plaintiff consented to John Jason being designated as the pri-

mary beneficiary to the pension proceeds when she executed the spousal consent form. Thus, the son was legally entitled to receive all of the proceeds. The plaintiff expected nothing from the pension because the changes made after she signed the form did not eliminate any right that she had before she signed the form. The subsequent allocation of 10% of the proceeds was not a change in the designation of the beneficiary as the son remained a primary beneficiary, after the changes were made.

Further, the trial court did not recognize the changes made by the decedent after plaintiff had signed the form. Rather, the court found the beneficiary designation form valid as it was written when signed by plaintiff.

Plaintiff next argues that the 1992 form was not executed in accordance with 29 U.S.C.A. § 1055(c)(2)(A)(iii) (West Supp. 1996), which requires that a spouse's consent be witnessed by a plan representative or a notary public for the election to take effect. Plaintiff asserts that because she did not sign the 1992 form in the presence of a plan representative or notary public, she is entitled to 100% of the proceeds, unless the 1987 form is valid, in which case she is entitled to at least 50% of the pension proceeds, *citing Profit Sharing Plan for Employees of Republic Fin. Servs. v. MBank Dallas, N.A.,* 683 F.Supp. 592, 594 (N.D.Texas 1988). All parties agree that plaintiff did not sign the form in the presence of a plan representative or a notary public. Plaintiff concedes, however, that she agreed to have the form notarized outside of her presence.

In *Butler v. Encyclopaedia Britannica, Inc.,* 843 F.Supp. 387 (N.D.Ill.1994), the plan participant's spouse failed to read the beneficiary designation form before signing it. Had the spouse read the form, he would have learned that the plan participant's daughter was the designated beneficiary, and not him. *Id.* at 390. The spouse challenged the validity of his consent on the ground that he did not sign the form in the presence of a notary public. *Id.* at 395. As is the case here, the spouse did not contest the authenticity of his signature on the form. *Id.* at 396.

The *Butler* court noted that, applied literally, 29 U.S.C. § 1055(c)(2)(A)(iii) requires that spousal consent be witnessed by a notary. *Butler,* 843 F.Supp. at 396. However, it further noted that the purpose of a notary is to prove the authenticity of the signature. *Id.* The purpose of the statute is, thus, satisfied when the spouse does not dispute the authenticity of his or her signature on the form, although it may have been signed outside the presence of any notary public or plan representative. *Id.* In such a situation, the consent may be accepted as valid without defeating any substantive statutory objective. *Id.*

Here, plaintiff admitted that she reviewed the document prior to signing it, that she agreed to have the form notarized outside her presence, and that her signature was authentic. The plaintiff's failure to sign the form before a notary was a technicality, which she cannot now use to impeach the validity of her consent.

Because the plaintiff signed the consent form and agreed to have it notarized outside of her presence, no genuine issue of material fact exists. It was within the court's authority to determine, as a matter of law, the validity of the consent and who was entitled to the proceeds. The trial court correctly found plaintiff's consent to be valid, and properly granted summary judgment in the son's favor. Point denied.

In her final point, plaintiff argues that the trial court erred in dismissing her complaints against defendants, Lockhart and Cummins, and in finding them not liable for damages caused by Lockhart's alleged official misconduct. Specifically, she contends that, pursuant to § 486.355, RSMo 1994, Lockhart, the notary, is liable because she committed official misconduct when she acknowledged that plaintiff had signed the document in her presence when, in fact, she had not. Additionally, the plaintiff alleges that, pursuant to § 486.360, RSMo 1994, Cummins, as Lockhart's employer, is also liable because it consented to Lockhart's official misconduct.

Plaintiff contends that the purpose of a notary public is to "make sure there is knowledge of what is occurring," and that the

document "as signed is what the party actually signs with no later changes." However, it is the plaintiff's responsibility to read the document, including the waiver language, before signing it. The 1992 form contained provisions to help ensure that plaintiff's consent was knowing and considered. The plaintiff admitted that she read the form. It was not Lockhart's duty to acknowledge the contents of the document or plaintiff's understanding of such.

■ The rationale for notarization is to avoid the risk that the signature will not be authentic. *Butler*, 843 F.Supp. at 396. Thus, the notary's duty is to acknowledge the authenticity of the signature. Lockhart had previously notarized documents for plaintiff and the decedent outside of plaintiff's presence. Further, Lockhart recognized plaintiff's signature on the 1992 form.

The plaintiff agreed to have the document notarized outside of her presence. Plaintiff cannot now claim that she was defrauded or damaged by Lockhart's failure to notarize the form in her presence. Even if the notary acted in an irregular manner, the evidence supported a finding that the acts were authorized. *Sharpton v. Lofton*, 721 S.W.2d 770, 776 (Mo.App.1986).

In *Sharpton*, the plaintiffs sued the notary who acknowledged a deed for a piece of their property. They alleged that the notary committed official misconduct when it notarized a deed signed outside of the notary's presence. *Id.* However, the evidence showed that the plaintiffs had agreed to have the deed notarized outside of their presence. *Id.* The plaintiffs admitted at trial that they had freely signed the deed and knew what they were doing. *Id.* The trial court found that the notary's acts were authorized. *Id.* Because the plaintiff here did not dispute the genuineness of her signature, Lockhart did not commit official misconduct, which would subject her to liability for notarizing the form outside of plaintiff's presence. The trial court correctly denied plaintiff's claims because the notary's misconduct was authorized. *Id.*

■ Additionally, Lockhart's alteration to the form identifying plaintiff as a primary beneficiary was a clarification. The decedent consented to this change, as evidenced by his initials next to the change. Thus, her actions did not constitute official misconduct.

Finally, the plaintiff failed to show that she was damaged as a result of the conduct of Lockhart or Cummins. Plaintiff, not by the actions of the decedent or Lockhart, but by her own actions, waived her right to the pension proceeds. Point denied.

The judgment of the trial court is affirmed.

LOWENSTEIN, P.J., and SPINDEN, J. concur.